**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CHANEL, Inc., a New York corporation, | No. 05-CV-55-TUC-FRZ |
| Plaintiff, | **ORDER** |
| vs. | |
| Arash Mohajeri and Roya Mohajeri a/k/a Roya Khadivian, individually and jointly, d/b/a SmashionFashion.com d/b/a SmashionFashion@aol.com; Western Motors, Inc., an Arizona corporation d/b/a SmashionFashion.com d/b/a SmashionFashion@aol.com; and Does 1-10, | |
| Defendants. | |

**Background**

On January 27, 2005, Plaintiff Chanel, Inc., filed its Complaint, alleging, among other things, that Defendants Arash Mohajeri, Roya Mohajeri, and Western Motors, Inc., engaged in trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114, and false designation of origin in violation of 15 U.S.C. § 1125(a). Chanel served Defendants Arash and Roya Mohajeri with copies of the summons and Complaint on February 1, 2005, and Defendant Western Motors on February 3, 2005. Defendants never answered the Complaint.

On February 25, 2005, Chanel filed an application for the entry of default against Defendants. The Clerk of the Court entered Defendants' default on March 22, 2005. On September 14, 2005, Chanel filed a motion for default judgment. That same day, Chanel

1   mailed copies of the motion to Defendants at the addresses where each was served with the
2   Complaint.
3       On October 14, 2005, the Court signed an Order granting Chanel's motion for default
4   judgment. The Court issued a permanent injunction against Defendants and awarded Chanel
5   statutory damages of $300,000; costs of $344.80; and investigative costs of $782.68. The
6   Court took under advisement Chanel's request for attorney's fees and directed Chanel to
7   submit a more detailed statement regarding its requested attorney's fees. On October 14,
8   2005, the Clerk of the Court entered judgment consistent with the Court's Order. The Clerk
9   of the Court docketed the Order and Judgment on October 17, 2005.
10      On October 18, 2005, Defendants filed an opposition to Chanel's motion for default
11  judgment. On October 19, 2005, Defendants filed a motion for reconsideration of the Court's
12  October 14 Order.
13      In an October 28, 2005 Order, the Court noted that Defendants' opposition to the
14  motion for default judgment was moot because it was filed after the Court granted the
15  motion. Because Defendants' motion for reconsideration raised the same issues Defendants
16  presented in their opposition, the Court stated that it would consider the issues in the motion
17  for reconsideration.  In a separate Order dated that same day, the Court ordered Chanel to
18  file a response to the motion for reconsideration and Defendants to file a reply.
19      Chanel filed the detailed statement regarding its requested attorney's fees.  Chanel
20  also filed its response to the motion for reconsideration. Defendants filed their reply.
21      Pending before the Court, therefore, are Defendants' motion for reconsideration and
22  Chanel's request for attorney's fees.
23
24                          **Motion for Reconsideration**
25      Default judgments are disfavored, and cases should be decided on their merits
26  whenever it is reasonably possible. *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811,
27  814 (9th Cir. 1985). "This does not mean, of course, that the moving party is absolved from
28  the burden of demonstrating that, in a particular case, the interest in deciding the case on the

- 2 -

merits should prevail over the very important interest in the finality of judgments." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). Defendants bear the burden of demonstrating that the default judgment should be vacated. *See Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004), *cert denied*, ___ U.S. ___, 125 S. Ct. 1704 (2005); *TCI Group Life Ins. Plan*, 224 F.3d at 696.

In their motion for reconsideration, Defendants request that the Court set aside its default judgment, noting that "the Court has the power to relieve the Defendants from the judgment on terms that are just for any reason justifying relief from operation of the judgment, Rule 60, F.R.C.P."

**A.     Defendants are not entitled to relief under Rule 60(b)(1), Fed. R. Civ. P.**

The Court has the discretion to vacate a default judgment if Defendants meet their burden of demonstrating that Chanel would not be prejudiced by reopening the case, that they have a meritorious defense, and that they did not engage in culpable conduct that led to the default. *TCI Group Life Ins. Plan*, 224 F.3d at 695-96. The Court can deny the motion to vacate the default judgment if Defendants fail to meet their burden as to **any** of these three factors. *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000).

**1.     Chanel would not be prejudiced by reopening the case.**

Prejudice does not exist simply because Chanel is forced to litigate its claims on the merits or because resolution of the case is delayed. *See TCI Group Life Ins. Plan*, 244 F.3d at 701. Prejudice exists if Chanel's ability to pursue its claims will be hindered. *Id.* "[D]elay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id.* (quoting *Thompson v. American Home Assurance Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996)).

The Court is not persuaded that Chanel's ability to pursue its claims would be hindered if the Court set aside the default judgment. Chanel contends that it would be "unfair to put Chanel in the position of having to conduct its discovery after an almost one year delay when that delay was caused by the Defendants' decision to ignore these proceedings." But

1 the Court notes that not all the delay was caused by Defendants – Chanel waited almost six
2 months after the Clerk of the Court entered default before it filed its motion for default
3 judgment.  And, although Defendants' opposition to the motion for default judgment was
4 untimely, their motion for reconsideration was filed one day after the Clerk of the Court
5 docketed the default judgment.

6 Chanel asserts that prejudice will occur because the SmashionFashion website is no
7 longer operating, and, therefore, Chanel would be unable to conduct a forensic examination
8 of the website or question Defendants about its contents.   Chanel's claim that it would be
9 unable to conduct a forensic examination of the website is conclusory.  And it is unclear why
10 Chanel would be unable to question Defendants about the website's contents.

11 Chanel also alleges that prejudice will occur because "non-party records of phone
12 communications, credit card and money order transactions may or may not be available
13 because Chanel's allegations in this case cover a time period back to at least January 2001."
14 And  Chanel contends that prejudice will result from the delay because it cannot determine
15 whether "third-party witnesses who would have been available during the discovery period
16 in this case are still available for deposition and document production."  These claims are
17 speculative and conclusory.  In addition, Chanel's delay in seeking default judgment and its
18 decision to file a lawsuit in January 2005 involving allegations dating back to January 2001
19 may be causes for these difficulties.

20 The Court concludes that the alleged prejudice to Chanel does not justify refusing to
21 grant the motion for reconsideration.

**2. Defendants failed to meet their burden of demonstrating that they have a meritorious defense.**

To demonstrate a meritorious defense, Defendants have the burden of presenting "specific facts that would constitute a defense." *TCI Group Life Ins. Plan*, 244 F.3d at 700 This burden is not a heavy one, but does require more than conclusory statements or general

- 4 -

denials without supporting facts. *Franchise Holding II*, 375 F.3d at 926; *TCI Group Life Ins. Plan*, 244 F.3d at 700.

Defendants Arash and Roya Mohajeri do not present a meritorious defense as to any of the allegations against them in the Complaint. The only defense Defendants present is that Defendant Western Motors did not participate in the infringing activities. Defendants state that the SmashionFashion business was "an incidental side business that [Defendant Roya Mohajeri] conducted out of her home by computer," a "token home-based business" that was "more a hobby than a business." Defendant Roya Mohajeri alleges in her affidavit that Defendant Western Motors "did not participate at all in [her] SmashionFashion business." These conclusory statements, however, do not satisfy Defendants' burden to present specific facts that would constitute a defense.[1]

Defendants' principle contentions are that the statutory damages award is "totally out-of-line" for their misconduct and that injunctive relief is moot because they have now acquiesced to Chanel's demands. Neither constitutes a meritorious defense to the Complaint.[2]

Defendants have failed to meet their burden to present a meritorious defense. Thus, the Court, in its discretion, will deny the motion for reconsideration. *See TCI Group Life Ins.*

---

[1] Moreover, the assertions that SmashionFashion was a "token" business or a "hobby" are dubious considering the fact that Chanel's private investigator Rob Holmes received an electronic message ("e-mail") from an individual named Rebecca at SmashionFashion@aol.com that stated that Rebecca's **employer** instructed Mr. Holmes to put the name "Roya" in the payable-to section of his money order because "this is how we always accept money orders from customers." And the assertion that Western Motors did not participate in the SmashionFashion business is similarly suspect in light of another e-mail from Rebecca which instructed Mr. Holmes to send the money order to a specific address–Defendant Western Motors' business address, not the Mohajeri's residential address.

[2] Moreover, for the reasons set forth in the Court's October 14, 2005 Order, neither is persuasive. Most notably, on the issue of damages, Defendant Roya Mohajeri's avowal that she "had few, if any, mock Chanel products to offer during the course of business," is questionable. The record indicates that, on at least four occasions, the SmashionFashion.com website advertised four different styles of counterfeit Chanel shoes, available in at least five different sizes.

- 5 -

*Plan*, 244 F.3d at 697 ("If . . . the defendant presents no meritorious defense, then nothing but pointless delay can result from reopening the judgment."); *see also American Assoc. of Naturopathic Physicians*, 227 F.3d at 1108 (court can deny the motion to set aside default judgment if defendants fail to meet their burden as to any of the three factors). Although the Court need not consider the remaining factor (whether Defendants have demonstrated that they did not engage in culpable conduct leading to the default judgment), the Court will do so because that factor presents an additional, alternative, independent ground for denying the motion for reconsideration.

### 3. Defendants failed to meet their burden of demonstrating that they did not engage in culpable conduct that led to the default judgment.

Defendants' conduct is culpable if they "received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Group Life Ins. Plan*, 244 F.3d at 697 (quoting *Alan Neuman Productions, Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir.1988) (emphasis added)). Defendants' conduct is culpable "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id*. at 698. "Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional' . . . and is therefore not *necessarily* . . . culpable or inexcusable." *Id.* at 697-98.

When Defendants were served with Chanel's Complaint, they were also served with summonses that clearly informed them that they were required to answer the Complaint within twenty days and that "[i]f you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint." They did not answer the Complaint. Defendants were also served with the motion for default judgment, which clearly informed Defendants that they were in default, that Chanel believed the prerequisites for default judgment had been met, and that Chanel was seeking $300,000 in statutory damages, a permanent injunction, investigator's fees, costs, and attorney's fees. Defendants did not

oppose this motion until thirty-four days after it had been filed, one day after the Clerk of the Court had docketed the Court's October 14, 2005 Order and default judgment.

Defendants explain that they did not answer the Complaint because they stopped selling "Chanel-like products" on their website, wrote to Chanel's attorneys that "their demands were met and claims exaggerated," and they "thought that would take care of the matter." Defendants decision not to respond to the Complaint was deliberate and willful. In addition, this explanation is not a credible, good faith explanation for Defendants' failure to answer. First, the only evidence of a letter to Chanel's attorney is an unsigned facsimile purportedly from Defendants Arash and Roya Mohajeri. That facsimile does not state that Chanel's demands had been met or that Chanel's claims were exaggerated; it contends that Chanel's allegations are "vitriolic and wholly inappropriate" and "extremely ridiculous," and that Chanel's "legal position in this matter is not well reasoned and [its] accusations are off base." Second, there is no evidence that Defendants made any effort to discuss with Chanel's attorney whether the lawsuit had been resolved by the facsimile or by the alleged removal of Chanel-like products from the website.[3]  *Compare Fountain v. Permatile Concrete Products Co.*, 582 So. 2d 1069, 1072 (Ala. 1991) ("[Defendant's] conclusory allegations that he thought the suit had been settled were insufficient as a matter of law to warrant a finding that the default judgment was not the result of culpable conduct on [Defendant's] part."), *with Riley v. Allstate Ins. Co.*, 166 F.R.D. 374, 376 (E.D. La.1996) (failure to timely answer complaint was understandable where defendant presented sworn affidavits stating that defendant believed case was settled and plaintiff had agreed to dismiss it). Finally, Defendants' claim that they believed the matter had been resolved is not credible in light of

---

[3]And it is unclear whom Defendant Roya Mohajeri "immediately assured that no Chanel-like products were further offered/mentioned on the website." There is no evidence that she communicated to Chanel that the Chanel-like products had been removed from the website. The facsimile states, despite contrary evidence of which Chanel was aware, that "Smashion Fashion is a website that does not carry Chanel products" and that Defendants "are not in the business of selling 'counterfeit Chanel products.'"

- 7 -

1  the fact that Chanel served Defendants with its motion for default judgment.  Defendants
2  offer no explanation for their failure to timely respond to the motion for default judgment.
3  Defendants have failed to meet their burden of demonstrating that they did not engage
4  in culpable conduct that led to the default judgment.  This is an independent and additional
5  ground for denying the motion for reconsideration.

**B.      Defendants are not entitled to relief under Rule 60(b)(6), Fed. R. Civ. P.**

Alternatively, the Court has the discretion, pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, to relieve a party from a final judgment or order for "any other reason justifying relief from the operation of the judgment."  A party seeking relief under Rule 60(b)(6) must show "'extraordinary circumstances' justifying the reopening of a final judgment."  *Gonzalez v. Crosby*, ___ U.S. ___, ___, 125 S. Ct. 2641, 2649, 162 L. Ed. 2d 480 (2005).  *See also Community Dental Services v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002). To satisfy that requirement, the party must show "both injury and circumstances beyond his control that prevented him from proceeding with the . . . defense of the action in a proper fashion."  *Community Dental Services*, 282 F.3d at 1168.  Neglect or lack of diligence is insufficient.  *See Lehman v. United States*, 154 F.3d 1010, 1017 (9th Cir. 1998).

Defendants state that they stopped selling "Chanel-like products" on their website, wrote to Chanel's attorneys that "their demands were met and claims exaggerated," and that they "thought that would take care of the matter."  These statements do not demonstrate "extraordinary circumstances" that would authorize relief from the default judgment.  In addition, as previously noted, these statement do not address Defendants' failure to timely respond to Chanel's motion for default judgment.  The motion for default judgment contains sufficient information to notify Defendants that their actions had not "take[n] care of the matter."

**C.      Conclusion**

In light of the foregoing, the Court, in its discretion, will deny Defendants' motion for reconsideration and will not vacate the default judgment.

- 8 -

**Motion for Attorney's Fees**

Chanel seeks an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117(b). "[U]nder 15 U.S.C. § 1117(b), in cases in which the violation of . . . 15 U.S.C. § 1114(1)(a), consists of 'intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark,' the court shall grant the prevailing party a reasonable attorney's fee, unless it finds 'extenuating circumstances.'" *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 711 (9th Cir. 1999). The "extenuating circumstances" exception is not defined, but is "extremely narrow." *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997). It is undisputed that Defendants intentionally used counterfeit trademarks, knowing that the marks were counterfeit. And Defendants have failed to allege any extenuating circumstances. Thus, the Court concludes that an award of reasonable attorney's fees is appropriate in this case.

The first step in determining a reasonable attorney's fee is to determine the "lodestar" by multiplying a "reasonable hourly rate" by the "number of hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983). *See also Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). The party seeking the award has the burden of establishing that the hourly rate and hours expended are reasonable. *See Blum v. Stenson*, 465 U.S. 886, 897, 104 S. Ct. 1541, 1548, 79 L. Ed. 2d 891 (1984); *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622-23 (9th Cir. 1993); *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987). If the party has done so, there is a strong presumption that the lodestar is a reasonable attorney's fee. *Jordan*, 815 F.2d at 1262.

**A.     Hourly Rate**

As to the reasonable hourly rate, the burden is on Chanel to "produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11, 104 S. Ct. at 1547 n.11.

1    Chanel attempts to establish the following hourly rates for their attorneys and
2 paralegal:

3      Stephen M. Gaffigan    (attorney)    $310
       R. Douglas Dalton      (attorney)    $400
4      Kim M. Fusich          (paralegal)   $110

5    To support the reasonableness of these hourly rates, Chanel submits their attorneys'
6 declarations and the affidavit of an attorney who did not participate in the litigation.

7    Chanel's attorney Stephen M. Gaffigan has been practicing law in Florida for eleven
8 years, coordinates Chanel's nationwide anti-counterfeiting effort, and was "responsible for
9 the coordination of the investigation in this matter and preparation of all pleadings and other
10 documents submitted to th[e] Court." He contends that his $310 per hour billing rate for
11 intellectual property litigation is "equal to or less than the prevailing rate for intellectual
12 property attorneys in Arizona."

13    Chanel's attorney R. Douglas Dalton, an attorney with twenty-eight years of legal
14 experience in Arizona, was local counsel in this case. He states that his hourly billing rate
15 was $400, and that his paralegal's hourly billing rate was $110. He avers that these rates
16 "represent reasonable hourly rates for lawyers and paralegals of similar skill and experience
17 within Arizona."

18    Nonparticipating attorney John N. Iurino, an attorney with twenty-five years' legal
19 experience in Arizona, avers that he "believe[s] the rates charged by Plaintiff's counsel in
20 this case are within the range of rates currently charged by lawyers in similar litigation cases
21 in Tucson" and that, based on a review of Arizona market data, Chanel's counsel's rates are
22 "within the range of market rates charged in Tucson and are reasonable."

23    Defendants challenge the hourly rates, arguing that they "do not prevail for such work
24 in the Tucson area/legal community, particularly when the services entail obtaining a
25 judgment by default and work patently and/or admittedly involving reiteration of
26 work/document preparation performed repeatedly before in other, similar cases." In support
27 of this argument, Defendants submit the affidavits of two nonparticipating attorneys.
28

- 10 -

Attorney Edward H. Laber, who has practiced law in Arizona since 1985 and sits on the Arizona State Bar's Fee Arbitration Committee, avers that $310 per hour is "near the very top of hourly rates charged" in Tucson and that $400 per hour is "an exceptionally high rate for lawyers who typically charge by the hour." Attorney Dennis A. Rosen, who has practiced law in Arizona since 1972 and acted has an expert witness on attorney's fees issues, avers that the hourly rates for experienced counsel in commercial matters in Tucson "range between $225 per hour and $400 per hour." Although he states that he charges $400 per hour, he avows that "he believes [this] to be the highest hourly rate currently charged in the City of Tucson for commercial litigation on a strictly hourly basis." He states that this rate is "not the generally prevailing rate for those types of services in Tucson."

The Court, in its discretion, finds Mr. Gaffigan's $310 hourly rate "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11, 104 S. Ct. at 1547 n.11. Mr. Gaffigan served as lead counsel in this trademark litigation. Although Mr. Laber states that this billable rate is "very near the top" of billable rates in Tucson, it is slightly lower than the mid-point of the range to which Mr. Rosen avowed, and significantly lower than Mr. Rosen's own rate.

Mr. Dalton's hourly rate of $400 is excessive in light of the services he provided. He was local counsel and was only "responsible for the coordination of the formatting [of] all documents to comply with the Local Rules, and advising lead counsel the best approach based on familiarity with practice in this District." Regardless of Mr. Dalton's experience, $400 per hour is not in line with the rates prevailing in the community for his services, which included reviewing documents; conferencing and communicating with his co-counsel, his paralegal, and an individual named Diane Payne; and some legal research. Thus, the Court, in its discretion, will reduce Mr. Dalton's hourly rate to $250, which is above the bottom of Mr. Rosen's range for experienced counsel in commercial matters and more properly reflects the prevailing rate for the services Mr. Dalton provided.

The Court, in its discretion, will not reduce the paralegal's hourly rate of $110. This rate is supported by Mr. Dalton's declaration and Mr. Iurino's affidavit, and Defendants have not contested it.

Accordingly, the Court will use the following rates for calculating the lodestar:

| | | |
|---|---|---|
| Stephen M. Gaffigan | (attorney) | $310 |
| R. Douglas Dalton | (attorney) | $250 |
| Kim M. Fusich | (paralegal) | $110 |

**B.    Reasonable Hours**

As to the reasonable number of hours expended in the litigation, "counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th Cir. 1987). Counsel is also required to exercise "billing judgment" by "mak[ing] a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1939-40. The Court can reduce the number of hours requested "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers*, 796 F.2d at 1210.

To support the reasonableness of its attorneys' and paralegals' hours, Chanel submits its attorneys' declarations and itemized billing statements. Defendants argue that the fee is not "fair and reasonable under the circumstances," noting that the services were incurred in procuring a default judgment and that Mr. Gaffigan's number of hours do not appear to reflect the fact that he "regularly does for Chanel the sort of work he did in this case."

Mr. Gaffigan's billing statement indicates that he spent 36.25 hours on this case. However, he only billed Chanel for 25.80 hours, explaining that "[h]ours worked in excess of $8,000.000 in fees were discounted as a professional courtesy." This indicates a good faith effort to exclude excessive, redundant, or otherwise unnecessary hours. The Court, in its discretion, declines to further reduce his hours.

Mr. Dalton's billing statement indicates that he spent 9.2 hours on this case and that his paralegal spent 1.2 hours on the case. Mr. Dalton declares, without amplification, that he made a good faith effort to exclude excessive, redundant or otherwise unnecessary time from the detailed time records" because he and co-counsel "closely coordinated their efforts in this proceeding to avoid excessive, redundant or otherwise unnecessary time." However, Mr. Dalton provides no evidence of what hours he and his paralegal originally expended that were ultimately eliminated. Mr. Dalton's claim that he exercised his billing judgment, without evidence of hours actually expended and eliminated, is insufficient for the Court to determine whether he actually or adequately exercised his billing judgment. *See Walker v. United States Dep't of Housing and Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996) ("[T]here is no record of any such billing judgment, as the plaintiffs allege that they wrote off hours before recording them."); *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327-1328 (D.C. Cir. 1982) ("The fee application should therefore indicate whether nonproductive time or time expended on unsuccessful claims was excluded and, if time was excluded, the nature of the work and the number of hours involved should be stated."). Thus, a reduction of Mr. Dalton's and his paralegal's billable hours is appropriate for failing to adequately document their billing judgment. *See Walker*, 99 F.3d at 770 ("The proper remedy when there is no evidence of bill judgments is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment."). The Court, in its discretion, will reduce their hours by twenty-nine percent – the same amount by which Mr. Gaffigan reduced his hours.

**C.     Lodestar Reductions**

Defendants seek a reduction of the lodestar. Once the lodestar is calculated based on a reasonably hourly rate and a reasonable number of hours, there is a strong presumption that the lodestar is a reasonable attorney's fee. *Jordan*, 815 F.2d at 1263. "The lodestar is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar

- 13 -

amount is unreasonably high or unreasonably low." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal quotation marks omitted).  This is not a rare or exceptional cases and, in light of the reductions discussed above to the hourly rate and hours expended, the Court, in its discretion, rejects Defendants' request to reduce the lodestar.

**4.  The Final Lodestar Calculation.**

The Court, in its discretion, will award Chanel 9,724.72 in attorneys' fees.  That amount is calculated as follows:

| Attorney | Reqst'd Hourly Rate | Reqst'd Hours | Reqst'd Lodestar | Rsnble Hourly Rate | Rsnble Hours | Rsnble Lodestar | Percent Reduction |
|---|---|---|---|---|---|---|---|
| Gaffigan | $310 x | 25.80 = | $7,998.00 | $310 x | 25.80 = | $7,998.00 | 0% |
| Dalton | $400 x | 9.20 = | $3,680.00 | $250 x | 6.53 = | $1,633.00 | 56% |
| Fusich | $110 x | 1.20 = | $132.00 | $110 x | 0.85 = | $93.72 | 29% |
| **TOTAL** | | 36.20 | $11,810.00 | | 33.18 | **$9,724.72** | 18% |

**Request for Oral Argument**

Defendants have requested a hearing on their motion for reconsideration.  The Court has determined that the issues have been fully and adequately briefed and that oral argument would not aid the Court in its understanding of the issues.  Therefore, the Court, in its discretion, will deny Defendants' request for oral argument.

**Conclusion**

In light of the foregoing,

**IT IS ORDERED** that Defendants' Motion for Reconsideration (U.S.D.C. document #15) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' request for a hearing on its motion for reconsideration is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's request for attorney's fees as part of Plaintiff's Motion for Final Default Judgment (U.S.D.C. document #10) is **GRANTED** in the amount of **$9,724.72**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall issue an **amended judgment** accordingly.

DATED this 20th day of January, 2006.

FRANK R. ZAPATA
United States District Judge